UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT EDDINGS, on behalf of himself and all others similarly situated, | ) | CASE NO.: 1:17-CV-00362 |
| Plaintiff, | ) | JUDGE SOLOMON OLIVER, JR. |
| vs. | ) | |
| GENERAL ALUMINUM MANUFACTURING COMPANY, | ) | **JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT** |
| Defendant. | ) | |

## I. INTRODUCTION

Plaintiff Robert Eddings ("Representative Plaintiff, "Class Representative," or "Plaintiff"), on behalf of himself and the members of proposed settlement Class ("Class Members"), and General Aluminum Manufacturing Company ("Defendant"), respectfully move this Court to preliminarily approve the Class Action Settlement Agreement ("Settlement Agreement" or "Settlement") between Plaintiff and Defendant pursuant to Fed. R. Civ. P. 23(e).

In support of this motion, Representative Plaintiff and Defendant submit the Settlement Agreement and its exhibits (*see* **Exhibit 1**), which consist of the following documents and proposed orders:

Exhibit A: List of Plaintiffs-Class Members

Exhibit B: Confidential Agreement and General Release and Agreement and General Release as Class Representative

Exhibit C: Preliminary Order Approving Settlement and Notice

Exhibit D: Class Notice

Exhibit E: Final Order and Judgment Entry

Representative Plaintiff and Defendant request that the Court grant preliminary approval of the Settlement, designate Representative Plaintiff as Class Representative, preliminarily approve Class Representative's request for a Service Award, designate Plaintiffs' counsel as Class Counsel, preliminarily approve Class Counsel's request for attorneys' fees, and direct distribution of notice to the Class by entering the proposed Preliminary Order attached to the Settlement Agreement as Exhibit D. Following the Fairness Hearing, Representative Plaintiff and Defendant will request that the Court grant final approval of the Settlement by entering the proposed Final Order and Judgment Entry attached to the Settlement Agreement as Exhibit E.

The following schedule sets forth a proposed sequence for the Settlement:

- Five (5) days after Preliminary Approval: Defendant will provide Class Counsel a spreadsheet containing the names, last known addresses, and Social Security Numbers of the Class Members;

- Fourteen (14) days after Preliminary Approval: Class Counsel will mail Notice to the Class Members;

- Thirty (30) days after mailing of Class Notice: Last day for Class Members to "opt-out" of the Settlement and submit written objections to the Settlement;

- Forty-Five (45) days after mailing of Class Notice: Last day for filing and serving of papers in support of final Settlement approval;

- Forty-Five (45) days after mailing of Class Notice: Class Counsel will file a Declaration verifying that the Class Notice was distributed, and the Parties will submit the proposed Estimated Schedule of Individual Payments and an updated version of the proposed Final Order and Judgment Entry;

- Sixty (60) days after mailing of Class Notice **[DATE TO BE SET BY COURT]**: Final Settlement approval hearing at **[TIME TO BE SET BY COURT];**

- Thirty-One (31) days after the Court's Final Order and Judgment Entry: the Effective Date; and

- Three (3) days after the Effective Date: Defendant will mail the settlement funds to Representative Plaintiff and the Class Members, the Service Award to Representative Plaintiff, and the attorneys' fees and reimbursement of litigation expenses to Class Counsel.

As explained below, the Settlement Agreement was reached during arms-length negotiations between the Parties, which were conducted by experienced counsel following investigation, and on the basis of mutual recognition of the strengths and weaknesses of each other's positions.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Action

On February 22, 2017, Plaintiff filed this Action as a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219. (Doc. No. 1). Plaintiff amended his Complaint to remove the collective action allegations and to bring a "class action" pursuant to Fed. R. Civ. P. 23 under the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), O.R.C. § 4111.03. (Doc. No. 12).

The action contests Defendant's failure to pay Plaintiff and its hourly employees properly. Specifically, Plaintiff alleges that Defendant had a companywide practice of improperly docking time of its hourly employees for work performed before their scheduled start and after their scheduled end times. (Doc. No. 12, ¶ 15). Plaintiff also alleges that Defendant had a companywide practice of not including certain bonuses in employees' regular rate for purposes of computing overtime. (*Id.*, ¶ 25). Defendant denies these allegations.

### B. Negotiation of The Settlement

Shortly after this case was filed, the parties began discussing the possibility of early resolution. To that end, the parties engaged in informal discovery regarding the alleged claims and asserted defenses. (Nilges Decl., ¶ 10) (**Exhibit 2**). Specifically, Defendant produced certain wage and hour information of randomly selected Class Members by Class Counsel. This information included: the number of weeks worked by the class sample since 2014; the time punches for each day since 2014; the applicable pay rate for each workweek; all paid vacation

and sick days; the amount of time provided each day for lunch breaks; and the amount actually paid, including overtime. (*Id.*). Class Counsel, in conjunction with its consultant, calculated the alleged unpaid overtime for each of the randomly selected Class Members. Class Counsel then applied the alleged unpaid overtime for the randomly selected Class Members across all 267 Class Members. Under this model, the total alleged unpaid overtime for all Class Members was $263,525.50. (Nilges Decl., ¶ 11).

On June 30, 2017, the parties engaged in mediation with well-respected mediator Jerry Weiss. The parties reached a resolution at the mediation. (*Id.*, ¶ 12). Under the terms reached at mediation, the parties agree that there are disputes about whether any violation occurred, whether Defendant's actions were willful, whether a two or three-year lookback period should apply and whether liquidated damages are appropriate under the circumstances. Defendant contends that no violation occurred, Defendant's actions were not willful, a two-year lookback period should apply in any event and liquidated damages are not appropriate under the circumstances. Defendant has not admitted any wrongdoing.

### C. The Settlement Terms

The terms of the Settlement Agreement include: the total Settlement Payment to be made by Defendant, the Effective Date of the Settlement, the calculation of Individual Payments to eligible recipients, the process for distributing Individual Payments to recipients, the proposed Service Award to Representative Plaintiff in recognition of his service in this Action and the providing of a general release, and the proposed distribution of reasonable attorneys' fees and expense reimbursements to Class Counsel. (*See* **Exhibit 1**).

The persons eligible for Individual Payments consist of Representative Plaintiff and members of the proposed settlement class. The definition of the settlement class encompasses

289 current and former hourly employees of Defendant who worked more than forty hours in one or more workweeks during the period of February 22, 2014 to February 22, 2017. (*Id.*, ¶ 4).

The Class Members will release federal and state wage-and-hour claims, rights, demands, liabilities and causes of action asserted in Plaintiff's First Amended Complaint, including but not limited to claims for unpaid wages, unpaid overtime compensation, liquidated damages, interest, attorneys' fees, and expenses, pursuant to the Fair Labor Standards Act and any applicable state wage statute where Class Members may have worked for Defendant, including but not limited to relevant State Claims and to the Ohio Minimum Fair Wage Standards Act through the Release Period. (*Id.*, ¶ 28). The "Release Period" for Plaintiff and the Class shall mean the period between February 22, 2014 and the date the District Court enters final approval. (*Id.*, ¶ 30).

The Individual Payments for which Class Members are eligible will be calculated proportionally on each Class Member's alleged overtime damages. The Calculation Period for Representative Plaintiff and the Class shall mean the period between February 22, 2014 and February 22, 2017. (*Id.*, ¶ 6).

## III. THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

The proposed class settlement is subject to approval by the Court pursuant to Fed. R. Civ. P. 23(e). As shown below, the Court's preliminary approval is warranted.

### A. Preliminary Approval of the Settlement Under Rule 23(b) Is Warranted

#### 1. Certification of the Settlement Class Is Appropriate

A proposed settlement class must satisfy the requirements of Rule 23. *UAW v. General Motors Corp.*, 497 F.3d 615, 626 (6th Cir. 2007) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). The proposed Class satisfies those requirements.

The proposed class meet Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy of representation. *See Senter v. General Motors Corp.*, 532 F.2d 511

(6th Cir.), *cert. denied*, 429 U.S. 870 (1976); *UAW v. General Motors Corp.*, 497 F.3d at 626. The Class, consisting of 289 members, is "so numerous that joinder of all members is impracticable." Common issues of law or fact are presented by the Class's claims under the OMFWSA, including:

a) Whether Defendant miscalculated the overtime compensation it paid to Plaintiff and the Class Members by excluding bonus payments from the calculation of their "regular rates" for purposes of overtime compensation;

b) Whether Plaintiff and the Class Members would have received additional overtime compensation if the bonus payments had properly been included in their "regular rates" of pay, and, if so, in what amount; and

c) Whether Plaintiff and the Class Members were denied wages as a result of Defendant's alleged improper docking.

Plaintiff is an adequate representative of the Class, in that he has common interests with other class members and he has vigorously prosecuted the interests of the class through qualified counsel. *Rutherford v. City of Cleveland*, 137 F.3d 905 (6th Cir. 1998).

The Class further satisfies Rule 23(b)(3)'s requirements of predominance and superiority. *Senter*, 532 F.2d at 522; *UAW v. General Motors Corp.*, 497 F.3d at 626. The unpaid overtime issues presented under the OMFWSA predominate over any individual questions. Class-wide resolution of this controversy is superior to the alternative of litigating 267 individual suits. *General Tel. Co. v. Falcon*, 457 U.S. 147, 159 (1982) (class certification advances "the efficiency and economy of litigation which is a principal purpose of the procedure"); *Day v. NLO*, 851 F. Supp. 869, 883 (S.D. Ohio 1994) (of equal importance "are considerations of the avoidance of the inequality resulting from piecemeal litigation as well as a concern to provide access to the courts for litigants with limited resources and common claims").

**2. The Class Notices Satisfy Rule 23 and Due Process**

Rule 23(e) requires the Court to "direct notice in a reasonable manner to all class members who would be bound" by the settlement. *Bailey v. White*, 320 Fed. Appx. 364, 2009 WL 928595 (6th Cir. 2009). The notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *UAW v. General Motors Corp.*, 497 F.3d 615, 626 (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

Reasonable notice to class members is required by due process as well. *Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008) (citing *DeJulius v. New England Health Care Employees Pension Fund*, 429 F.3d 935, 943-44 (10th Cir.2005) (citing *Mullane,* 339 U.S. at 313; *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Due process "does not, however, require *actual* notice to each party intended to be bound by the adjudication of a representative action." *Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008) (emphasis by the court) (citing *DeJulius,* 429 F.3d at 944 (citing *Mullane,* 339 U.S. at 313-14); *In re Integra Realty Res., Inc.,* 262 F.3d 1089, 1110-11 (10th Cir. 2001); *Silber v. Mabon,* 18 F.3d 1449, 1453-54 (9th Cir.1994))). The issue is not whether all class members received notice, "but whether the class as a whole had notice adequate to flush out whatever objections might reasonably be raised to the settlement." *Fidel*, 534 F.3d at 514 (quoting *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir.1993)).

The "individual notice" requirement of Rule 23 and due process is fulfilled by sending written notice to class members by first-class mail at the addresses shown in the defendant's business records. *Grunin v. International House of Pancakes* (8th Cir. 1975), 513 F.2d 114, 120, *cert. denied* (1975), 423 U.S. 864 (1975) (citing *Eisen*, 417 U.S. at 172-77). The Eighth Circuit noted that, in *Eisen*, "the Supreme Court specifically held that individualized notice by mail to

the last known address was the 'best notice practicable' in a class action." *Grunin*, 513 F.2d at 121.

In the present case, the proposed Class Notice satisfies these requirements. Under the terms of the Settlement Agreement and the proposed Preliminary Order, the Notices will be sent to the members of the class by first-class mail using the addresses shown in Defendant's records.

**B. <u>Approval of the Settlement Under Rule 23(e) Is Warranted</u>**

Under Rule 23(e), a class settlement must be "fair, reasonable, and adequate" under a seven-factor standard discussed below. *UAW v. General Motors Corp.*, 497 F.3d 615, 626 (citing *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir.1992); *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir.1983)).

The Sixth Circuit has recognized that "the law generally favors and encourages the settlement of class actions." *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981). Such actions, by their nature, involve uncertainties of outcome, difficulties of proof, and lengthy litigation, and lend themselves readily to compromise. 4 Newberg On Class Actions § 11.41 (4th ed. 2007) (citing cases). Therefore, when considering the below factors, the courts apply a "strong presumption" in favor of finding a settlement to be fair. *Dail v. George A. Arab, Inc.*, 391 F. Supp. 2d 1142, 1145-46 (M.D. Fla. 2005) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). *Accord*, *Sweet v. General Tire & Rubber Co.*, 1982 WL 278, *5 (N.D. Ohio Mar. 17, 1982).

**1. <u>The Seven-Factor Standard Is Satisfied</u>**

The Sixth Circuit uses seven factors to evaluate class action settlements:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class

> representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW v. General Motors Corp.*, 497 F.3d 615, 626 (6th Cir. 2007) (citing *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir.1992); *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir.1983)), *quoted in Crawford*, 2008 WL 4724499 at *3.

As shown below and in the Nilges Declaration, the seven-factor standard supports approval of the Settlement.

***a) No Indicia of Fraud or Collusion Exists***

The Parties' counsel each have extensive experience litigating wage and hour claims, including claims for unpaid hours worked. (*See* Nilges Decl., ¶ 5-7). A Settlement Agreement was achieved only after arms-length and good faith negotiations between the Parties after mediation through a third party. (*Id.*, ¶¶ 10-12). As such, there are no indicia of fraud or collusion.

***b) The Complexity, Expense and Likely Duration of Continued Litigation Favor Approval***

The policy favoring the settlement of class actions and other complex cases applies with particular force here. Employment cases in general, and wage-and-hour cases in particular, are expensive and time-consuming. Moreover, the Parties continue to disagree over the merits of Plaintiffs' claims.

If forced to litigate this case further, the Parties would certainly engage in complex, costly and protracted wrangling. The Settlement, on the other hand, provides substantial relief to Representative Plaintiff and the Class Members promptly and efficiently, and amplifies the benefits of that relief through the economies of class resolution. (*Id.*, ¶ 17).

### *c) Investigation Was Sufficient to Allow the Parties to Act Intelligently*

The Parties engaged in substantial investigation prior to negotiating the Settlement Agreement. (*Id.*, ¶¶ 10-12). Relevant information was exchanged resulting from Plaintiff's allegations that Defendant failed to pay overtime compensation to Plaintiff and the Class Members. (*Id.*, ¶ 10). In addition, Class Counsel obtained data about randomly selected Class Members, and issues in the case were thoroughly researched by counsel for the Parties. (*Id.*, ¶ 11). All of aspects of the dispute are well-understood by both sides.

### *d) The Risks of Litigation Favor Approval*

Counsel for both sides believe in the merits of their clients' positions, but nonetheless recognize that the litigation of claims is uncertain in terms of duration, cost, and result. Moreover, in the present case, Defendant raised affirmative defenses to Plaintiff's claims, and the outcome of those defenses is uncertain as well. Continued litigation would be risky for all.

### *e) Uncertainty of Recovery Supports Approval*

Plaintiffs' range of possible recovery is also open to dispute. Even if Plaintiffs succeed on the merits of their claims, the amount of recovery is uncertain and something upon which the Parties continue to disagree.

### *f) Experienced Counsel's Views Favor Approval*

The Parties' counsel are experienced in wage-and-hour class actions, have acted in good faith, and have represented their clients' best interests in reaching the Settlement Agreement. Counsel support the Settlement Agreement as fair and reasonable, and in the best interest of the Class as a whole. (Nilges Decl., ¶ 5-7, 14, 21).

### 2. The Settlement Distributions Are Fair, Reasonable and Adequate

As a part of the scrutiny it applies to a wage and hour settlement, "a court must ensure that the distribution of the settlement proceeds is equitable." *Crawford v. Lexington-Fayette Urban County Government*, 2008 WL 4724499 (E.D. Ky. Oct. 23, 2008) (citing *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999). In the present case, the Settlement Agreement provides that Defendant's Settlement Payment, after deduction of the Service Award to Representative Plaintiff, attorneys' fees, and litigation reimbursements to Class Counsel, will be divided into Individual Payments for which participants in the settlement will be eligible. All components of the proposed distribution are proper and reasonable, and the settlement as a whole is fair, reasonable and adequate for Plaintiff and the Class Members.

#### *a) The Individual Payments Are Reasonable and Adequate*

All Individual Payments will be calculated proportionally on each Class Member's alleged damages resulting from Defendant's alleged failure to pay wages properly during the Calculation Period. The Calculation Period for Plaintiff and the Class shall mean the period between February 22, 2014 and February 22, 2017. (**Exhibit 1**, ¶6).

If approved by the Court, the Proposed Settlement will provide substantial payments to Representative Plaintiff and the Class Members for unpaid wages . Representative Plaintiff and the Class Members were allegedly denied $178,700.74 in overtime compensation. (Nilges Decl., ¶ 15).

After deductions, Representative Plaintiff and the Class Members will receive $147,929.92. As such, the Proposed Settlement recovers approximately 83% of the overtime compensation Representative Plaintiff and the Class Members were allegedly denied. (*Id.*, ¶ 16).

Prior to the Fairness Hearing, the Individual Payments to Representative Plaintiff and the Class Members will be calculated, and a Proposed Schedule of Individual Payments will be submitted to the Court for approval.

***b) Representative Plaintiff's Service Award Is Proper and Reasonable***

Service awards to a representative plaintiff recognizing the value of his or her services on behalf of other participants are proper. As stated in *In re Dunn & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366 (S.D. Ohio 1990):

> Numerous courts have not hesitated to grant incentive awards to representative plaintiffs who have been able to effect substantial relief for classes they represent.

130 F.R.D. at 373 (citing *Wolfson v. Riley*, 94 F.R.D. 243 (N.D. Ohio 1981); *Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27, 32 (E.D. Pa. 1985); *In re Minolta Camera Products Antitrust Litigation*, 666 F. Supp. 750, 752 (D. Md. 1987)).

In this Circuit, service awards to representative plaintiffs are "typically justified when named plaintiffs expend more time and effort beyond that of other class members in assisting class counsel with litigation, such as by actively reviewing case and advising counsel in prosecution of case." *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 273, 276 (S.D. Ohio 1997).

The courts recognize that "differentiation among class representatives based upon the role each played may be proper in given circumstances." *Dun & Bradstreet*, 130 F.R.D. at 374 (citing *In re Jackson Lockdown/MCO Cases*, 107 F.R.D. 703, 710 (E.D. Mich. 1985)). *See also Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250 (S.D. Ohio 1991) (among the factors warranting incentive awards are the "time and effort spent" by the

individuals in question and "whether these actions resulted in a substantial benefit to Class Members").

In the present case, the Nilges Declaration establishes that the proposed Service Award is proper and reasonable. (Nilges Decl., ¶ 23). Representative Plaintiff Robert Edding's services were extensive and effective. (*Id.*). In addition to discovering Defendant's alleged overtime violation and reporting it to Class Counsel, he provided extensive factual information to Class Counsel and faithfully engaged in calls and other communications with Class Counsel. (*Id.*). Moreover, he attended the mediation and otherwise subjected himself to the responsibilities of serving as a named plaintiff in a lawsuit against his former employer. (*Id.*).

***c) The Attorneys Fees and Expenses to Class Counsel Are Proper and Reasonable***

The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b). The OMFWSA, which is interpreted in accordance with the FLSA,[1] also provides that the defendant is liable for "costs and reasonable attorney's fees." O.R.C. § 4111.10.

In *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994), *cert. denied*, 513 U.S. 875 (1994), the Sixth Circuit held that the FLSA's mandatory attorneys' fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley*, 19 F.3d at 1134 (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.*, 732 F.2d 495, 502 (6th Cir.1984)).

[1] *See Douglas v. Argo-Tech Corp.*, 113 F.3d 67, at fn 2 (6th Cir. 1997); *Mitchell v. Abercrombie & Fitch, Co.*, 428 F. Supp. 2d 725, 732 (S.D. Ohio 2006).

*Fegley* was followed in *Bessey v. Packerland Plainwell, Inc*. 2007 WL 3173972 (W.D. Mich. 2007), in which the district court approved a one-third attorneys' fee in an FLSA settlement very much like the one presented here. Fulfilling *Fegley*'s emphasis on "encourage[ing] the vindication of congressionally identified policies and rights," the *Bessey* court found "the percentage of fund method is the proper method in this case for compensating plaintiffs' counsel. The fact that the damages which could have been claimed by each class member were relatively modest provides a strong reason for adopting the percentage of recovery method, for it rewards counsel for taking on a case which might not otherwise be economically feasible." *Bessey*, 2007 WL 3173972, at *4 (citing *Rawlings v. Prudential Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993) (the district court "must make sure that [class] counsel is fairly compensated for the amount of work done as well as for the results achieved" and "the percentage of the fund method more accurately reflects the results achieved"). *Accord, In re Revco Securities Litigation*, Fed. Sec. L. Rptr. ¶ 96,956, at 94,069 (N.D. Ohio 1993) ("'[t]he percentage of the fund approach… provides a fair and equitable means of determining attorney's fees'" because "'the size of a common fund is an objective yardstick by which the benefit conferred upon the class can be measured'").

In determining the reasonableness of the one-third fee, the *Bessey* court considered the data about Rule 23 class settlements summarized in *Shaw v. Toshiba America Information Systems, Inc.*, 91 F. Supp. 2d 942 (E.D. Tex. 2000), *discussed in Bessey*, 2007 WL 3173972, at *4:

> The most complete analysis of fee awards in class actions conducted to date was conducted by the National Economic Research Associates, an economics consulting firm. The data is reported at Frederick C. Dunbar, Todd S. Foster, Vinita M. Juneja, Denise N. Martin, Recent Trends III: What Explains Settlements in Shareholder Class Actions? (NERA, June

> 1995) (hereinafter "NERA Study"). This data indicates that regardless of size, attorneys' fees average approximately 32% of the settlement.

*Shaw*, 91 F. Supp. 2d at 988 (citing NERA Study at 7 & Exh. 12) (emphasis added).

The NERA Study relied upon in *Shaw* and *Bessey* showed the average fee to class counsel was approximately one-third of the settlement, while the average result achieved for class members was only 7% to 11% of claimed damages. Measured against that standard, the settlement in the present case is exemplary. The Individual Payments represent approximately 83% of the compensation Representative Plaintiff and the Class Members were allegedly denied over the three-year limitations period, after deduction of the Service Award to Representative Plaintiff, attorneys' fees, and litigation reimbursements to Class Counsel. The attorneys' fees requested are reasonable in light of the exceptional benefit achieved for Plaintiff and the Class. (Nilges Decl., ¶ 18).

The attorneys' fees requested by Class Counsel should not be altered because counsel efficiently resolved this case early on rather than prolonging the litigation and increasing his potential fees. As the Manual for Complex Litigation recognizes, "one purpose of the percentage method is to encourage early settlements by not penalizing efficient counsel, thus ensuring competent counsel continue to be willing to undertake risky, complex, and novel litigation." Manual for Complex Litigation (4th) § 14.121.

Had this case not settled, Class Counsel would have vigorously litigated the case without any promise of success and compensation. At every step of the litigation, Defendant could have succeeded. Therefore, the Class Members were at great risk for non-payment. This risk of non-payment strongly supports the amount requested here and warrants notice to the class of Plaintiffs' attorneys' fee request. Prior to the Fairness Hearing, Class Counsel will submit supplemental information regarding the reasonableness of the fee request. (Nilges Decl., ¶ 21).

A statement of expenses will also be submitted by Class Counsel prior to the Fairness Hearing. Expenses, including the cost of a Third Party Administrator, are currently estimated to be approximately $15,736.75. (Nilges Decl., ¶ 22). All such expenses were and/or will be incurred in the course of this action for the purpose of preserving, proving, and presenting the claims of Representative Plaintiff and the Class Members, and mailing notice to the 289 Class Members and attending the Fairness Hearing.

On the basis of these factors, as well as all of the other factors discussed above, the Court should conclude that the Settlement is fair, reasonable, and adequate, and grant preliminary and later final approval under Rule 23(e).

## IV. CONCLUSION

Representative Plaintiff and Defendant request that the Court grant preliminary approval of the Settlement, designate Representative Plaintiff as Class Representative, preliminarily approve Class Representative's request for a Service Award, designate Plaintiffs' Counsel as Class Counsel, preliminarily approve Class Counsel's request for attorneys' fees and costs, and direct distribution of notice to the Class by entering the proposed Preliminary Order attached to the Settlement Agreement as Exhibit C.

Respectfully submitted,

/s/ Hans A. Nilges
Hans A. Nilges (0076017)
Shannon M. Draher (0074304)
NILGES DRAHER LLC
7266 Portage Street, N.W.
Suite D
Massillon, Ohio 44646
Telephone: 330-470-4428
Facsimile: 330-754-1430
hans@ohlaborlaw.com
sdraher@ohlaborlaw.com

Counsel for Plaintiff

/s/ Stephen S. Zashin
Stephen S. Zashin (0064557)
Jeffrey J. Wedel (0041778)
ZASHIN & RICH CO., L.P.A.
950 Main Avenue, 4th Floor
Cleveland, Ohio 44113
Telephone: 216-696-4441
Facsimile: 216-696-1618
ssz@zrlaw.com
jjw@zrlaw.com

Counsel for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on November 28, 2017, a copy of the foregoing *Joint Motion For Preliminary Approval Of Class Action Settlement Agreement* was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

/s/ Hans A. Nilges
Attorney for Plaintiff